**STATEMENT OF FACTS**

Your Affiant, ███████, is a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), and assigned to the Joint Terrorism Task Force (JTTF) with the FBI Albany Division in Albany, NY. Among other duties, your Affiant is responsible for conducting national security investigations of potential violations of federal criminal law. Your Affiant is tasked with investigating criminal activity in and around the United States Capitol (Capitol) grounds in Washington, D.C. on January 6, 2021. As a Task Force Officer with the FBI, your Affiant is authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of Federal criminal laws.

The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies, or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause, it does not contain every fact known by me or the FBI. The dates and times listed in this Affidavit should be read as "on or about."

### *Background: Events at the U.S. Capitol on January 6, 2021*

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, S.E., in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

*Facts Specific to Troy Weeks*

Based upon review of public video, closed circuit television ("CCTV") footage and police body-worn camera footage depicting the events at the U.S. Capitol building and grounds on January 6, 2021, law enforcement identified an individual who pushed against police and stole a can of oleoresin capsicum ("OC") spray from a police officer while located near an entrance to the U.S. Capitol. The FBI subsequently posted a photograph of the individual at the U.S. Capitol under the name BOLO #85 and requested help from the public to identify the individual. As set out in detail below, law enforcement has identified BOLO #85 as TROY WEEKS ("WEEKS"), and there is probable cause to believe that on January 6, 2021, WEEKS committed violations of 18 U.S.C. §§ 231(a) (civil disorder); 111(a) (assault of a federal officer); 1752(a)(1), (2), and (4) (unlawful entry on restricted buildings or grounds); and 40 U.S.C. §§ 5104(e)(2)(E) (impeding passage through Capitol grounds).

**A.  BOLO #85's Activities at the U.S. Capitol on January 6, 2021.**

During the investigation, law enforcement reviewed video depicting the events at the U.S. Capitol on January 6, 2021. Specifically, law enforcement reviewed video from an entrance to the U.S. Capitol located on the Lowet West Terrace referred to as "the tunnel." Based on that review, law enforcement identified BOLO #85 who was wearing a gray jacket, a backpack and a red, white and blue scarf with stars on it. Below is a still image of BOLO #85 taken from video footage at the tunnel:



CCTV footage shows that BOLO #85 entered the tunnel at approximately 3:02 p.m. Below is a still image of CCTV footage showing BOLO #85, walking toward the police line in the tunnel:



According to body-worn camera footage, BOLO #85 approached the front line of police officers, who were located behind the first of two sets of doors inside the tunnel, at approximately 3:02 p.m.



Another video recorded by another January 6 defendant ("Video 1") shows BOLO #85 standing right by the set of doors:



4

Approximately twenty seconds after reaching the police line, BOLO #85 reached his right arm through the broken window pane of the door and grabbed a Metropolitan Police ("MPD") officer's can of oleoresin capsicum ("OC") spray:



BOLO #85 successfully took the OC spray from the officer but before BOLO #85 could pull his hand back, the officer grabbed the can of OC spray back from BOLO #85:



Approximately thirty seconds later, BOLO #85 made his way around the doors and closer to the front line of police officers. Below is a still image from body-worn camera depicting BOLO #85's torso and the door frame to his right:

5



A few seconds later, body-worn camera shows BOLO #85 grabbing the inside of a police riot shield:



During the above camera footage, BOLO #85 told officers that he could not turn around in response to officer's request that he move back.

At approximately 3:04 p.m., BOLO #85 was still at the front of the police line. BOLO #85 was rubbing his eyes and told officers, "Please! We're gonna die! Let us through! I can't breathe! I have asthma!" Below is a still image from body-worn camera footage depicting BOLO #85 at approximately this time:

6



Shortly thereafter, according to Video 1, BOLO #85 was pushed away from the frontline by officers:



CCTV footage shows BOLO #85 was pushed out of the tunnel by the mob at approximately 3:05 p.m.:



Over one hour later, at approximately 4:15 p.m., BOLO #85 was located near the west side of the U.S. Capitol building.



According to body-worn camera, BOLO #85 told officers, "why don't we have f***ing police protecting the ballots? Why don't we have this sh*t when we have elections?"

### B. *Identification of BOLO #85 as TROY WEEKS*

During the investigation, law enforcement identified a photograph of an individual who strongly resembled BOLO #85. The photograph was associated with an Instagram account. Open source research revealed a woman with the last name "Weeks" was the owner of the Instagram account. Law enforcement searched law enforcement databases and identified male relatives of the owner of the Instagram account. One of those relatives was a man named TROY WEEKS with a residence in Greenville, New York. On or about April 13, 2021, law enforcement traveled to the residence in Greenville, New York and spoke to a woman who identified herself as a relative of WEEKS. The woman stated that WEEKS no longer lives at that residence and stated he moved to Rensselaerville, New York.

On or about April 23, 2021, law enforcement spoke with a coworker of WEEKS' ("Coworker 1") who stated that WEEKS normally worked 10-hour shifts from 2:00 p.m. to 12:00 a.m. However, WEEKS did not work on January 6, 2021.

During the investigation, law enforcement also obtained records through legal process from a bank ("Bank 1") relating to WEEKS's bank accounts. Bank 1 provided law enforcement with responsive records, including video footage of an ATM transaction using WEEKS's account on or about January 4, 2021. Below is a still image of the video provided by Bank 1 which shows WEEKS wearing a gray jacket identical to the jacket worn by BOLO #85:



9

On or about November 4, 2021, law enforcement interviewed one of the owners of the building where WEEKS resided ("Landlord 1"). Landlord 1 was shown the above photograph provided by Bank 1 as well as a photograph of BOLO #85 at the U.S. Capitol. Landlord 1 identified the individual depicted in both photographs as WEEKS. On the same date, a local resident of Rensselaerville was also interviewed ("Resident 1"). Resident 1 was shown the same two photographs. S/he identified the individual in the Bank 1 photograph as WEEKS but was not sure who was the person in the second photograph.[1]

### *Conclusion*

Based on the foregoing, your affiant submits there is probable cause to believe that TROY WEEKS violated 18 U.S.C. § 111(a)(1), which makes it a crime to (a) forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114, as an officer or employee of the United States while engaged in or on account of the performance of his or her official duties.

Your affiant also submits there is probable cause to believe that WEEKS violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits that there is also probable cause to believe that WEEKS violated 18 U.S.C. § 1752(a)(1), (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

---

[1] The FBI received numerous public tips identifying BOLO #85. All of those tips identified BOLO #85 as someone other than TROY WEEKS.

10

Your affiant submits there is also probable cause to believe that WEEKS violated 40 U.S.C. § 5104(e)(2)(E) which makes it a crime to willfully and knowingly obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings;



Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 9th day of January, 2023.

_____
G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE