```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff,                  )
                                    )    CR No. 22-15
                                    )    Washington, D.C.
     vs.                            )    October 3, 2022
                                    )    9:30 a.m.
ELMER STEWART RHODES III, ET AL.,   )
                                    )    Day 4
        Defendants.                 )    Morning Session
_____)

    TRANSCRIPT OF JURY TRIAL OPENING STATEMENTS PROCEEDINGS
         BEFORE THE HONORABLE AMIT P. MEHTA
              UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Government:          Kathryn L. Rakoczy
                             Jeffrey S. Nestler
                             Alexandra Hughes
                             Louis Manzo
                             U.S. ATTORNEY'S OFFICE
                             601 D Street, NW
                             Washington, D.C. 20579
                             (202) 252-7277
                             Email:
                             kathryn.rakoczy@usdoj.gov
                             Email:
                             jeffrey.nestler@usdoj.gov
```

```
APPEARANCES CONTINUED:

For Defendant
Elmer Stewart Rhodes III:       Phillip A. Linder
                                BARRETT BRIGHT LASSITER LINDER
                                3300 Oak Lawn Avenue
                                Suite 700
                                Dallas, TX 75219
                                (214) 252-9900
                                Email:
                                phillip@thelinderfirm.com

                                James Lee Bright
                                3300 Oak Lawn Avenue
                                Suite 700
                                Dallas, TX 75219
                                (214) 720-7777
                                Email: jlbrightlaw@gmail.com

                                Edward L. Tarpley, Jr.
                                819 Johnston Street
                                Alexandria, LA 71301
                                (318) 487-1460
                                Email: edwardtarpley@att.net

For Defendant
Jessica M. Watkins:             Jonathan W. Crisp
                                CRISP AND ASSOCIATES, LLC
                                4031 North Front Street
                                Harrisburg, PA 17110
                                (717) 412-4676
                                Email: jcrisp@crisplegal.com
```

```
APPEARANCES CONTINUED:

For Defendant
Kelly Meggs:              Stanley Edmund Woodward, Jr.
                          BRAND WOODWARD LAW
                          1808 Park Road NW
                          Washington, D.C. 20010
                          (202) 996-7447
                          Email:
                          stanley@brandwoodwardlaw.com

                          Juli Zsuzsa Haller
                          LAW OFFICES OF JULIA HALLER
                          601 Pennsylvania Avenue, NW
                          Suite 900
                          S. Building
                          Washington, D.C. 20036
                          (202) 352-2615
                          Email: hallerjulia@outlook.com

For Defendant
Kenneth Harrelson:        Bradford L. Geyer
                          FormerFeds LLC
                          2006 Berwick Drive
                          Cinnaminson, NJ 08077
                          (856) 607-5708
                          Email:
                          Bradford@formerfedsgroup.com

For Defendant
Thomas E. Caldwell:       David William Fischer, Sr.
                          FISCHER & PUTZI, P.A.
                          7310 Governor Ritchie Highway
                          Empire Towers, Suite 300
                          Glen Burnie, MD 21061-3065
                          (410) 787-0826
                          Email:
                          fischerandputzi@hotmail.com
```

APPEARANCES CONTINUED:

Court Reporter:                William P. Zaremba
                               Registered Merit Reporter
                               Certified Realtime Reporter
                               Official Court Reporter
                               E. Barrett Prettyman CH
                               333 Constitution Avenue, NW
                               Washington, D.C. 20001
                               (202) 354-3249

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | P R O C E E D I N G S                                                |
| 2  | COURTROOM DEPUTY:  All rise.                                         |
| 3  | This court is in session.  The Honorable                             |
| 4  | Amit P. Mehta presiding.                                             |
| 5  | THE COURT:  Please be seated, everyone.                              |
| 6  | COURTROOM DEPUTY:  Please be seated, everyone, and                   |
| 7  | come to order.                                                       |
| 8  | Good morning, Your Honor.  This is Criminal Case                     |
| 9  | No. 22-15, United States of America versus Defendant No. 1,          |
| 10 | Elmer Stewart Rhodes III; Defendant 2, Kelly Meggs;                  |
| 11 | Defendant 3, Kenneth Harrelson; Defendant 4,                         |
| 12 | Jessica Watkins; and Defendant 10, Thomas Edward Caldwell.           |
| 13 | Kathryn Rakoczy, Jeffrey Nestler, Alexandra                          |
| 14 | Hughes, Troy Edwards, and Louis Manzo for the government.            |
| 15 | Phillip Linder, James Lee Bright, and                                |
| 16 | Edward Tarpley for Defendant Rhodes.                                 |
| 17 | Stanley Woodward and Juli Haller for                                 |
| 18 | Defendant Meggs.                                                     |
| 19 | Bradford Geyer for Defendant Harrelson.                              |
| 20 | Jonathan Crisp for Defendant Watkins.                                |
| 21 | And David Fischer for Defendant Caldwell.                            |
| 22 | Defendants Rhodes, Meggs, Harrelson, and Caldwell                    |
| 23 | are present in court for these proceedings.                          |
| 24 | Defendant Jessica Watkins is not yet present.                        |
| 25 | THE COURT:  Good morning, everyone.  I hope                          |

1   PROCEEDINGS
2           COURTROOM DEPUTY:  All rise.
3           This court is in session.  The Honorable
4   Amit P. Mehta presiding.
5           THE COURT:  Please be seated, everyone.
6           COURTROOM DEPUTY:  Please be seated, everyone, and
7   come to order.
8           Good morning, Your Honor.  This is Criminal Case
9   No. 22-15, United States of America versus Defendant No. 1,
10  Elmer Stewart Rhodes III; Defendant 2, Kelly Meggs;
11  Defendant 3, Kenneth Harrelson; Defendant 4,
12  Jessica Watkins; and Defendant 10, Thomas Edward Caldwell.
13          Kathryn Rakoczy, Jeffrey Nestler, Alexandra
14  Hughes, Troy Edwards, and Louis Manzo for the government.
15          Phillip Linder, James Lee Bright, and
16  Edward Tarpley for Defendant Rhodes.
17          Stanley Woodward and Juli Haller for
18  Defendant Meggs.
19          Bradford Geyer for Defendant Harrelson.
20          Jonathan Crisp for Defendant Watkins.
21          And David Fischer for Defendant Caldwell.
22          Defendants Rhodes, Meggs, Harrelson, and Caldwell
23  are present in court for these proceedings.
24          Defendant Jessica Watkins is not yet present.
25          THE COURT:  Good morning, everyone.  I hope

```
 1   everybody had a nice weekend.
 2           Mr. Crisp, your client is not present.  There you
 3   are.  Are you prepared -- she should be up any minute now.
 4           MR. CRISP:  For the preliminary matters, yes,
 5   Your Honor.
 6           THE COURT:  Okay.  Great.  Thanks.  So
 7   Ms. Watkins' presence is waived for these preliminary
 8   matters per her counsel.
 9           So there were a number of motions filed over the
10   weekend, into late last evening.  Let me just take all of
11   those up for -- I'm not going to take them up in the order
12   in which they were filed but in the order in which I hope
13   that they will make some logical sense.
14           So the first motion was Mr. Meggs' motion for a
15   bench trial at ECF 364.  Does the government -- let me just
16   ask, does the government consent to Mr. Meggs's bench
17   trial -- bench trial by Mr. Meggs?
18           MS. RAKOCZY:  Your Honor, this issue was addressed
19   extensively by the Court this summer, and I think at the
20   time that it was raised, it was being contemplated for all
21   defendants, the government was amenable to consenting to it.
22           The Court did note some concerns, citing some case
23   law, including the Supreme Court's case in -- or *Patton*
24   *versus United States*, 50 Supreme Court 253.
25           THE COURT:  Right.
```

1         MS. RAKOCZY:  That's about the interest not just
2    the defendants or the government has but the public has in
3    the interests of justice in cases having tried to the jury.
4    So we just would echo those concerns given this stage,
5    particularly in light of the jury having been sworn.
6         THE COURT:  Ms. Rakoczy, this is -- I don't mean
7    to be difficult, but simple yes-or-no answer on this point,
8    which is does the government provide its consent to
9    Mr. Meggs' request for a bench trial today?
10        MS. RAKOCZY:  I think if put that way, we would
11   say we would defer to the Court.  We do have some concerns.
12   We do not consent.
13        THE COURT:  Okay.  So if the government is
14   deferring to me, I'm not quite sure what that means as far
15   as the rule goes, but whatever it may mean, the motion is
16   denied.  The request is coming now here on the day of trial
17   and so, in that sense, perhaps it is late.  But beyond that,
18   Supreme Court has said, this is *Patton versus United States*
19   281 United States 276, Supreme Court wrote, "Trial by jury
20   is the normal, and with occasional exceptions, the
21   preferable mode of disposing of issues of fact in criminal
22   cases above the grade of petty offenses.  In such cases, the
23   value and appropriateness of jury trial have been
24   established by long experience and are not now to be denied.
25        "Not only must the right of the accused to a trial

1   by a constitutional jury be zealously preserved, but the
2   maintenance of the jury as a fact-finding body in a criminal
3   case is of such importance and has such a place in our
4   traditions, that before a waiver can become effective, the
5   consent of the government counsel and the sanction of the
6   Court must be had, in addition to the express and
7   intelligent consent of the defendant.  And the duty of the
8   trial court in that regard is not to be discharged as a mere
9   matter of rote, but with the sound and advised discretion
10  with an eye to avoid unreasonable or undue departures from
11  that mode of trial or from any of the essential elements
12  thereof and with a caution increasing in degree as the
13  offenses dealt with increase in gravity."  That excerpt from
14  *Patton* was restated by the D.C. Circuit in *Dixon versus*
15  *United States*, 292 F.2d 768.
16           And so the bottom line is that the Court does have
17  discretion ultimately in deciding whether to grant a bench
18  trial or not.  And as the Supreme Court has said, jury
19  trials are the norm and they should only be deviated with
20  occasional exceptions, and particularly as the seriousness
21  of the matter increases a court should be more skeptical of
22  granting a bench trial in those circumstances.  So for those
23  reasons, in addition to a couple of reasons I'm about to
24  state, the motion is denied.
25           As far as I understand, the reason Mr. Meggs wants

1  a bench trial is because he believes the jury we've
2  ultimately selected is not fair or biased and even perhaps
3  the panel at large is not fair and is biased.  I will
4  momentarily explain to everyone why that is not the case.
5  So the justification for a bench trial, I would say, is
6  unwarranted.
7         And, finally, what Mr. Meggs is ultimately asking
8  for is essentially a hybrid bench and jury trial at this
9  juncture because four defendants have not asked for a waiver
10 of the jury trial.
11        There's a case out of the Middle District of
12 Pennsylvania called *United States versus Cardenas Borbon*,
13 C-a-r-d-e-n-a-s B-o-r-b-o-n, 629 F.Supp.2d 445-2009.  And
14 the case is actually a post-trial case, but nevertheless the
15 District Court explained its reasons for not granting a last
16 minute bench trial of a single defendant in a
17 multi-co-defendant case.
18        And what the Court said in part is completely true
19 and applicable in this case.  So what the Court wrote there,
20 and I adopt this reasoning in full.  "In contrast, Borbon's
21 request, if granted, would have significantly impeded the
22 jury process because it would have created a substantial
23 risk of juror confusion.  Borbon would have proceeded to
24 trial in the company of three co-defendants, none whom
25 requested a bench trial.  The government refused to consent

1  to Borbon's request if it would have resulted in severance
2  of his case.
3       "Under these circumstances, jurors would have been
4  required to hear evidence about Borbon's case but prevented
5  from adjudicating his guilt.  Such a proceeding would have
6  engendered unwarranted evidentiary speculation regarding
7  both Borbon's role in the conspiracy vis-à-vis his
8  co-defendants and his individual criminal responsibility.
9       "The risk of juror confusion could not have been
10 remedied effectively with a curative instruction.  To the
11 contrary, such action would have simply called attention to
12 Borbon's unique trial posture and spawned further jury
13 selection.  The Court was particularly concerned that
14 heightened scrutiny of Borbon's status would have led
15 inexplicably to improper inferences on evidentiary
16 evaluation and would have tainted resolution of the ultimate
17 issue of guilt or innocence.
18      "Moreover, a joint bench and jury proceeding would
19 have involved multiple fact-finders creating the potential
20 for different conclusions regarding issues of witness
21 credibility and reliability of evidence.  Such disparities
22 would have created a risk of inconsistent verdicts between
23 Borbon and his alleged co-conspirators, thereby jeopardizing
24 the judiciary's overarching interest in fair and equitable
25 criminal proceedings.

1               "Lengthy, complex trials require careful judicial
2    administration to ensure that all parties have opportunity
3    to raise evidentiary objections and that jurors are
4    accurately instructed about the law.  Requiring the Court
5    and jury to act as concurrent fact-finders would erect
6    difficult hurdles to effective trial management and fetter
7    the Court's ability to conduct the trial in a manner that is
8    efficient and fair to all."  So I think that was Judge
9    Conner's decision out of the Middle District of Pennsylvania
10   squarely on point and I adopt his reasoning in full here.
11              There was also filed by the defendants a
12   supplement and renewed joint motion to transfer venue.  That
13   motion will be denied.  The defendant's motion and
14   supplement cites the same three surveys that we discussed in
15   the past, doesn't really advance the ball.  The motion also,
16   and to be specific, *Haldeman* has clearly stated that the
17   Court can rely on voir dire over any surveys that are
18   presented, which is precisely what this Court has done.  The
19   motion also cites a host of media articles, not clear to me
20   what purpose they serve because I was actually here, I don't
21   need media articles to know what transpired.
22              The defendants' motion suggests that the jurors
23   will not pay attention to the Court's instruction to ignore
24   media.  I find it hard to believe that the presumption of a
25   motion would be that the jurors would not follow

1   instructions, but, nevertheless, every single juror that has
2   been seated was asked before they were seated whether they
3   had reviewed -- or viewed any media before, during the
4   process of jury selection when there was heightened media
5   scrutiny or review of this case, and not one of them said
6   that had been exposed.  My sense is this is a very diligent
7   group of citizens, all of whom are going to abide by the
8   Court's instruction and, therefore, I have no fear that they
9   will do that.
10              The defendants have presented some final numbers
11  that they think support their position.  They do not.  The
12  defendants note that we went through 94 jurors during voir
13  dire, 47 of whom were deemed qualified.  They note that the
14  Court struck 30 of the 47 on the defendant's strike list,
15  meaning that 17 who responded affirmatively to "bias
16  questions," including question 22 were deemed to be
17  qualified.  And also note that of the 72 that the defendants
18  had identified on the objection list, five are now on the
19  jury.  Mr. Meggs' motion actually noted that there was one
20  juror as to whom the Court had denied a peremptory because
21  that juror's wife is employed by the Department of Justice.
22              So here are the actual numbers which we calculated
23  over the weekend.  We went through what the numbers were
24  prior to voir dire.  Here's what they are who were
25  identified after voir dire.

1	Of those who were qualified after voir dire, one
2	answered question 11 affirmatively, that's 2 percent of all
3	those who were qualified.  22, question 22 only ten had
4	answered that question affirmatively.  That is 21 percent of
5	those who were identified.  Question 44, 27, that was the
6	question about having observed the January 6th Committee
7	proceedings.  27 answered that affirmatively, 57 percent.
8	And here's the real key questions.  Question 45,
9	whether they had sort of bias with respect to January 6th,
10	only five qualified after the voir dire and answered that
11	question.  That's 11 percent.  Question 46, that was the
12	question about -- that was the question about whether you've
13	heard about the Oath Keepers.  25 of those who were
14	qualified said they had.  So it's about half.
15	And so of the qualified group, Question 47, which
16	was, do you have such views about the Oath Keepers or
17	preconceptions that you can't be fair and impartial, only
18	four, that is 9 percent, answered that question.
19	Question 48, this was the question had you ever
20	heard of any of the defendants.  Only three of the qualified
21	group, that's 6 percent, had ever heard of any of these
22	defendants, and zero, exactly zero, had said that they had
23	such strong views about these defendants that they would not
24	be able to fairly judge this case.
25	With respect to the impaneled jurors, these are

1   our final 16 jurors, exactly zero of them had answered
2   Question 11 affirmatively.  That is actually zero percent.
3           Question 22, only two of them on our panel had
4   actually answered that question affirmatively.  That is 13
5   percent.
6           Question 44, nine of them had actually watched the
7   January 6th Committee hearings.
8           Question 45, this was those who had such strong
9   feelings about January 6th that they could not be fair and
10  impartial.  Zero.  None.  Zero percent.
11          Question 46, number who had actually heard of
12  these -- excuse me, heard of the Oath Keepers.  Nine of the
13  16, 56 percent, but of that number, how many said they could
14  not be fair and impartial based upon what they heard?  Zero.
15          Number of jurors who had ever heard of any of
16  these defendants.  Zero.
17          Number of defendants [sic] consequently who could
18  not be fair and impartial based upon knowledge of these
19  defendants?  Zero.
20          So what we have here is a jury that, by and large,
21  has no preconceived bias or prejudice as to both
22  Oath Keepers or any of these defendants.  Not a single one
23  of them.
24          The only question that elicited anything more than
25  two responses was the question about the committee hearings,

1   but as all of you will recall, the vast majority of people
2   who came before the Court had very little recollection of
3   those hearings, let alone followed them to the extent that
4   people presumed that they would have.
5           And Question 46, where nine people had heard of
6   the Oath Keepers, but, again, a lot of them barely knew
7   anything about the group and the organization.
8           And then Question 22, which has been flagged as a
9   "prejudicial" question or -- again, only two had said
10  anything about that, had said that they had concerns about
11  people's safety.
12          So what that means is that voir dire has done its
13  job.  Both between voir dire and the strikes that were used
14  in this case, it's absolutely done its job.
15          The defendants have also said that five of the
16  individuals that were on their strike list were now on the
17  jury.  They are Juror 1140, Juror 0952, Juror 1262,
18  Juror 0481, and Juror 0299.
19          Juror 1140 answered one question yes.  That was
20  Question 46; that is, they had heard of the Oath Keepers.
21  But everything else was no.
22          Juror 0952 also answered yes to the question, did
23  they know the Oath Keepers, but everything else was answered
24  no.
25          I'll skip over 1262 for a moment.

1       Juror 0481 answered all questions no except for
2  the question about Oath Keepers.  Did the person know of
3  them or have heard of them.
4       And Juror 0299 had answered both 46 yes and 22
5  yes, but answered everything else no.
6       Juror 1262, this is the person that's been flagged
7  in Mr. Meggs' motion as the person as to whom the Court did
8  not accept a strike or add an additional strike.  The
9  defense had requested it because the juror's wife is
10 employed by the Department of Justice in the Civil Division
11 in the Federal Programs Branch.  That in and of itself is
12 certainly not sufficient to strike the individual.
13      There is a case that I've become familiar with out
14 of the Seventh Circuit -- it's not something that's been
15 adopted by the D.C. Circuit -- in which the Seventh Circuit
16 said it was an error for the trial court not to strike a
17 juror who actually had worked in the prosecutor's office
18 that was prosecuting the case based upon a presumption of
19 inherent bias or latent bias.  That clearly is not
20 applicable.
21      The gentleman who was actually seated on the jury,
22 I think, works in IT; his wife works in the Civil Division
23 of the Department of Justice.  So it's completely and far
24 removed from that.
25      That particular juror, 0268, answered one question

Case 1:23-cr-00035-RC   Document 161-1   Filed 04/24/24   Page 17 of 17

1040

1  yes, one question.  And that was question 22, and that was
2  his concern.  And this was the extent of the colloquy.
3              Question 22 asks whether -- and this is with the
4  particular juror.
5              "Question 22 asks whether you had any concern for
6  safety of yourself, close family, or family members on
7  January the 6th.  Can you tell us about that?"
8              His answer was, "Yeah.  I was just concerned for
9  my spouse.  I know we were far away because we lived in
10 Northwest D.C., but it still was worrisome when she was here
11 in D.C. and I was out in Dulles working."
12             The Court asked following:  "Okay.  And you know
13 the events of that day were sort of removed from that.  And
14 let me ask you:  Is there anything about the concern you had
15 for your spouse that day that would affect your ability to
16 be fair and impartial if you were selected as a juror?"
17             The prospective juror's answer was:  "I don't
18 believe so."
19             So the motions insofar as they request a bench
20 trial, change of venue, what have you, those motions are
21 denied.
22             There's a motion filed by Mr. Meggs to conduct a
23 deposition of John Siemens pursuant to Federal Rule of
24 Criminal Procedure 15.  That motion is denied insofar as
25 it's requesting -- seeking a request to continue the trial