## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 23-CR-35-3**  ( RC ) |
| v. | |
| **TROY WEEKS,** | **18 U.S.C. §§ 231(a)(3); 111(a)(1); 1752(a)(1); 1752(a)(2); 1752(a)(4); and 40 U.S.C. § 5104(E)(2)(E)** |
| **Defendant.** | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Troy Weeks, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the Metropolitan Police Department ("MPD") were called to assist officers of the USCP who were then engaged in the performance of their official duties.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP and

MPD attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      On January 6, 2021, beginning at approximately 2:42 p.m., numerous members of the mob attacked members of the USCP and MPD who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as "the tunnel." Over the course of more than two hours, members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police and stole items from the police defending the tunnel.

9.      At approximately 3:02 p.m., defendant Troy Weeks entered the tunnel where many members of the mob were fighting against the police. Weeks made his way through the crowd in the tunnel and toward the police line. After reaching the police line, Weeks turned around and called out to the crowd, "Alright! Get ready to push! C'mon!" Rioters around Weeks then pressed in closer to Weeks and the police.

10.     Weeks then reached his arm past a rioter who was located in front of him, through the broken window of a door, and grabbed a can of oleoresin capsicum ("OC") spray that was in the hands of MPD Sergeant W.B. Weeks grasped for the can in the officer's hands once then tried again. Weeks grabbed the can of OC spray on the second try and tried to pull it away from the officer and back through the door frame. MPD Sergeant W.B. was able to pull the can of OC spray back from Weeks before Weeks could get it out of the officer's hands.

11.     Seconds later, Weeks came around the door and made direct physical contact with the police on the other side. Weeks pressed his body up against police officers and their shields. At one point, Weeks also grabbed onto one of the officers' U.S. Capitol Police riot shields and was sprayed with OC spray.

12.     Weeks remained directly in front of the police line until approximately 3:05 p.m. when the police successfully pushed him back. Weeks exited the tunnel shortly thereafter.

13.     At approximately 3:45 p.m., Weeks was back at the police line near the tunnel. At this time, the police had successfully pushed all of the rioters out of the tunnel and the police line was now established at the mouth of the tunnel. At approximately 3:47 p.m., the mob outside the tunnel began a concerted push against the police line. The crowd pushed in unison as it called "HEAVE! HO!" Weeks, who was located directly in front of officers, joined the crowds rocking motion and pushed against the police defending the tunnel.

14.    Weeks remained in the area near the tunnel until at least approximately 4:00 p.m.

***Elements of the Offense***

15.    The parties agree that civil disorder, in violation of 18 U.S.C. §231(a)(3) requires the following elements:

    a.  The defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

    b.  At the time of the defendant's act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

    c.  The civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

16.    The parties agree that Assaulting, Resisting, or Impeding Officers, in violation of 18 U.S.C. § 111(a)(1) requires the following elements:

    a.  The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers from the MPD or USCP.

    b.  The defendant did such acts forcibly.

    c.  The defendant did such acts voluntarily and intentionally.

    d.  The officer assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties and assisting officers of the United States who were then engaged in the performance of their official duties.

     e. The defendant's acts involved physical contact with the victim of that assault or the intent to commit another felony.

17.     The parties agree that Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1) requires the following elements:

     a. The defendant entered or remained in a restricted building or grounds without lawful authority to do so.

     b. The defendant did so knowingly.

18.     The parties agree that Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1) requires the following elements:

     a. The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

     b. The defendant did so knowingly and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

     c. The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

19.     The parties agree that Engaging in Physical Violence in a Restricted Building or Grounds, in violation of Title 18, United States Code Section 1752(a)(4) requires the following elements:

     a. The defendant engaged in an act of physical violence against a person or property in, or in proximity to, a restricted building or grounds.

     b. The defendant did so knowingly.

20.     The parties agree that Obstructing or Impeding Passage through the Capitol Building or Grounds, in violation of Title 40, United States Code, Section 5104(e)(2)(E) requires the following elements:

    a.  The defendant obstructed or impeded passage through or within the Capitol Buildings or Grounds.

    b.  The defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

21.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that:

    a.  He committed an act to obstruct, impede, and interfere with USCP and MPD officers who were lawfully engaged in the performance of their official duties incident to and during the commission of a civil disorder. Specifically, among other things, the defendant pushed against the police inside the Lower West Terrace Tunnel and attempted to grab the OC spray out of the hands of MPD Sergeant W.B.

    b.  The civil disorder obstructed, delayed, and adversely affected commerce and the conduct and performance of federally protected functions, including the U.S. Secret Service's protection of the Vice President and the U.S. Capitol Police's protection of the Capitol building and its occupants.

    c.  He forcibly assaulted, resisted, opposed, intimidated, impeded, and interfered with members of the MPD and USCP who were engaged in the performance of their official duties. Specifically, at approximately 3:02 pm, the defendant forcibly assaulted Sergeant W.B. by voluntarily and intentionally grabbing Sergeant W.B.'s hand and forearm in an attempt to take a can of OC spray away from Sergeant W.B.

d. During such acts, he made physical contact with the victim Sergeant W.B. and acted with the intent to commit another felony, namely, a violation of 18 U.S.C. § 231(a)(3) (civil disorder).

e. He knowingly entered and remained in the restricted area of the U.S. Capitol building and grounds, knowing that it was a restricted area and that he had no lawful authority to be there. While there, he engaged in disorderly conduct and committed an act of physical violence by assaulting the police.

f. He entered the restricted area with the intent to impede or disrupt the orderly conduct of Government business or official functions, and his actions in fact impeded and disrupted the orderly conduct of government business, namely, the joint session of Congress convened at the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election.

g. He willfully and knowingly impeded and obstructed passage through Capitol Grounds.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     *s/ Kaitlin Klamann*
        KAITLIN KLAMANN
        Assistant United States Attorney
        IL Bar No. 6316768
        Capitol Siege Section
        U.S. Attorney's Office
        District of Columbia
        (202) 252-6778
        Kaitlin.klamann@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Troy Weeks, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5/20/2024

Troy Weeks
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date:

James Knox
Attorney for Defendant